**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DERRICK MCNEIL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WEST MARINE, INC., MATTHEW L. HYDE, BARBARA L. RAMBO, RANDOLPH K. REPASS, ALICE M. RICHTER, DENNIS F. MADSEN, CHRISTIANA SHI, JAMES F. NORDSTROM, JR., ROBERT D. OLSEN,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Derrick McNeil ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of West Marine, Inc. ("West Marine" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with West Marine, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed merger (the "Proposed Merger") between West Marine and affiliates of Monomoy Capital Partners ("Monomoy").

2. On June 29, 2017, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to

receive $12.97 in cash for each share of West Marine stock they own (the "Merger Consideration").

3. On July 24, 2017, in order to convince West Marine shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement on a Schedule 14A (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, they have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby violating SEC rules and regulations and rendering certain statements in the Proxy materially incomplete and misleading.

5. In particular, the Proxy contains materially incomplete and misleading information concerning the financial projections for the Company that were relied upon by the Board in recommending the Company's shareholders vote in favor of the merger and utilized by West Marine's financial advisor, Guggenheim Securities, LLC ("Guggenheim") in performing the valuation analyses that support its fairness opinion.

6. It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the forthcoming stockholder vote in order to allow the Company's stockholders to make an informed decision regarding the Proposed Merger.

7. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 and Regulation G, 17 C.F.R. § 244.100. Plaintiff seeks to enjoin Defendants from holding the stockholders vote on the Proposed Merger and taking any steps to consummate the Proposed

Merger unless, and until, the material information discussed below is disclosed to West Marine stockholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; and (ii) West Marine is incorporated in this District.

**PARTIES**

11. Plaintiff is, and at all relevant times has been, a holder of West Marine common stock.

12. Defendant West Marine is incorporated in Delaware and maintains its principal executive offices in at 500 Westridge Drive, Watsonville, California 95076-4100. The Company's common stock trades on the NASDAQ under the ticker symbol "WMAR."

13. Individual Defendant Matthew L. Hyde ("Hyde") has served as a director of the

Company since 2012.

14. Individual Defendant Barbara L. Rambo ("Rambo") has served as a director of the Company since 2009.

15. Individual Defendant Randolph K. Repass ("Repass") has served as a director of the Company since 1968.

16. Individual Defendant Alice M. Richter ("Richter") has served as a director of the Company since 2005.

17. Individual Defendant Dennis F. Madsen ("Madsen") has served as a director of the Company since 2010.

18. Individual Defendant Christiana Shi ("Shi") has served as a director of the Company since 2011.

19. Individual Defendant James F. Nordstrom, Jr. ("Nordstrom") has served as a director of the Company since 2012.

20. Individual Defendant Robert D. Olsen ("Olsen") has served as a director of the Company since 2013.

21. The Board and West Marine may collectively be referred to as the "Defendants." Each of the Individual Defendants herein is sued individually, and as an aider and abettor, as well as in his or her capacity as an officer and/or director of the Company, and the liability of each arises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of West Marine (the "Class"). Excluded from the Class are

Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23. This action is properly maintainable as a class action because:

a. The Class is so numerous that joinder of all members is impracticable. As of July 14, 2017, there were approximately 25,279,066 shares of West Marine common stock outstanding, held by hundreds of individuals and entities scattered throughout the country. The actual number of public shareholders of West Marine will be ascertained through discovery;

b. There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i) whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act;

ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading Proxy.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### I. The Proposed Merger

24. West Marine is a waterlife outfitter for cruisers, sailors, anglers, and paddlesports enthusiasts. The Company offers a selection of core boating and water recreation products, primarily serving the needs of boat owners and professionals providing services to them. It services its customers through physical stores and two e-commerce Websites. The Company is a specialty retailer of boating supplies, gear, apparel, footwear and other waterlife-related products. The Company operates approximately 260 stores located in 40 states, Puerto Rico and Canada, reaching domestic, international and professional customers.[1]

---

1 http://www.reuters.com/finance/stocks/companyProfile?symbol=WMAR.OQ.

25. On June 29, 2017, West Marine issued a press release announcing the Proposed Merger, which states in pertinent part:

> Watsonville, CA, June 29, 2017 - West Marine, Inc. ("West Marine"), a leading omni-channel specialty retailer exclusively offering boating gear, apparel, footwear and other waterlife-related products, and Monomoy Capital Partners ("Monomoy"), a New York-based private equity fund, announced today that they have executed a definitive merger agreement under which a wholly owned affiliate of Monomoy will acquire all of the outstanding shares of common stock of West Marine at $12.97 per share in cash, which represents a total equity value of $338 million. This price represents a premium of 32% over the 30-day average performance of West Marine's stock price reported on NASDAQ.
>
> "We are excited to be joining forces with Monomoy Capital Partners as we believe it is in the best interests of our stockholders, customers and associates," said Matt Hyde, West Marine's President and CEO. "In addition to providing our stockholders with a significant premium to the current share price, this transaction ensures that West Marine can continue to offer outstanding value to our customers who recreate on the water and provide a rewarding workplace for our associates."
>
> Daniel Collin, Co-Chief Executive Officer of Monomoy Capital Partners, L.P. said: "We are excited to welcome West Marine to the Monomoy portfolio. We have long admired West Marine and the unique value the company provides for its loyal customers and world class associates. We strongly support West Marine's vision for the future, strategic initiatives, and culture. We are excited to invest in and work together with the company's management team to continue to lead the industry."
>
> Company founder and board member, Randy Repass, has entered into a voting agreement whereby he and his affiliated entities over which he has sole or shared voting have agreed to vote shares representing approximately 20% of the Company's voting power in favor of the transaction. Following the close of the transaction, West Marine will be privately held and continue to be operated independently by the Company's management team.
>
> The transaction, which has been unanimously approved by West Marine's Board of Directors, is expected to close in the third quarter of this year, subject to West Marine's stockholder approval and other customary closing conditions.

26. The Merger Consideration appears inadequate in light of the Company's recent financial performance and prospects for future growth. Indeed, West Marine has experienced continuous and tremendous growth since fiscal year 2014. Specifically, the Company reported net income growth of 132% and 44% for fiscal years 2015 and 2016, respectively.

27. The Company's success has continued into fiscal year 2017. In a press release issued by the Company on April 26, 2017, Individual Defendant Hyde, CEO of West Marine, commented: "We are pleased that the improvements in our cost structure and our strategies are resulting in solid bottom-line gains. Despite the challenging weather and retail environment in the quarter, we've maintained our comparable store sales and improved gross margins over last year."

28. In sum, it appears that West Marine is well-positioned for financial growth, and that the Merger Consideration fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

**II. The Materially Incomplete and Misleading Proxy**

29. On July 24, 2017, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Merger. The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

30. The Proxy fails to provide material information concerning the Company's financial projections, which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Merger. Proxy, 40-41. The financial projections were also relied upon by the Company's financial advisor,

Guggenheim, in rendering its fairness opinion, as Guggenheim utilized the Company's projections of Unlevered Free Cash Flow ("UFCF") and EBITDA margins provided by West Marine's management in conducting its Discounted Cash Flow Analyses and Discounted Cash Flow Sensitivity Analyses. Proxy, 46, 54-55.

31. Specifically, the Proxy provides values for non-GAAP (generally accepted accounting principles) financial metrics EBITDA, EBIT, and UFCF, but fails to provide (i) line item projections for the metrics used to calculate these non-GAAP measures, or (ii) a reconciliation of the non-GAAP projections to the most comparable GAAP measures.

32. First, the Proxy defines EBIT as operating earnings (including the impact of stock-based compensation expenses (treated as a cash expense)) before interest and taxes yet fails to provide the values of the underlying line items: (i) operating earnings, (ii) stock-based compensation expenses, (iii) interest, and (iv) taxes. Proxy, 49, 60.

33. Second, the Proxy defines EBITDA as the Company's operating earnings (including the impact of stock-based compensation expenses (treated as a cash expense)), before interest, taxes, depreciation and amortization. However, the Proxy fails to disclose the values of the underlying line items: (i) operating earnings; (ii) stock-based compensation expenses; (iii) interest; (iv) taxes; and (v) depreciation and amortization. Proxy, 49, 60.

34. Third, the Proxy defines UFCF as after-tax unlevered operating cash flow minus capital expenditures and changes in working capital but fails to disclose the underlying line items: (i) after-tax unlevered operating cash flow, (ii) capital expenditures, and (iii) changes in working capital. Proxy, 50, 60.

35. When a company discloses non-GAAP financial measures in a Proxy, the Company must also disclose all projections and information necessary to make the non-GAAP measures not

misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

36. Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders. Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as West Marine included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[2]

37. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[3]

---

2 Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

3 *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into*

Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[4] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

38. In order to make the projections for West Marine included on page 60 of the Proxy materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

39. At the very least, the Company must disclose the line item projections for the financial metrics that were used to calculated the above-mentioned non-GAAP measures. Such projections are necessary to make the non-GAAP projections included in the Proxy not misleading. Indeed, the Defendants acknowledge the misleading nature of non-GAAP projections as West Marine stockholders are cautioned that "[n]on-GAAP financial measures should not be considered in isolated form or as a substitute for financial information presented in compliance with GAAP, and non-GAAP financial measures as used by the Company may not be comparable to similarly titled financial measures used by other companies." Proxy, 60.

40. Moreover, the financial projections at issue were relied upon by the Company's financial advisor, Guggenheim, in connection with its valuation analyses. Proxy, 46. The opacity concerning the Company's internal projections renders the information set forth on page 60 of the

---

*Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[4] *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

Proxy materially incomplete and misleading, particularly as companies formulate non-GAAP metrics differently. Once a proxy discloses internal projections relied upon by the board, those projections must be complete and accurate.

41. Clearly, shareholders would find this information material since the Board's unanimous recommendation that shareholders vote in favor the Proposed Merger was based, in part on the following:

- The Board believed that the value offered to our stockholders in the Merger was more favorable to our stockholders than the potential value of remaining a standalone company and that the Merger Consideration obtained was the highest that was reasonably attainable.
- The Board considered the possibility of continuing to operate the Company as a standalone public company, including the related risks and uncertainties and the prospects for the Company going forward as a standalone entity.
- [T]he Board considered… the Company's stock price performance over an extended period of time relative to the Merger Consideration [.]

Proxy, 41.

42. In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder)**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

45. As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which violates Section 14(a). SEC Regulation G has two requirements: (1) a general disclosure requirement; and (2) a reconciliation requirement. The general disclosure requirement prohibits "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure…not misleading*." 17 C.F.R. § 244.100(b). The reconciliation requirement requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a).

46. The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any

material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

47. Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger. Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

48. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

49. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

50. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy and

review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

51. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

52. West Marine is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

53. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

54. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**
**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

55. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56. The Individual Defendants acted as controlling persons of West Marine within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of West Marine, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

57. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

59. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

60. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

62. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C. Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 27, 2017

**FARUQI & FARUQI, LLP**

By: */s/ Michael Van Gorder*
Michael Van Gorder (#6214)
20 Montchanin Road, Suite 145
Wilmington, DE 19807
Tel.: (302) 482-3182
Email: mvangorder@faruqilaw.com

*Counsel for Plaintiff*

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*